IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 08-cv-01535-LTB

IN RE:

LINDA SUE SONNENSCHEIN,

      Debtor.


McGUANE & HOGAN, LLP,

      Appellant,

v.

DAVID E. LEWIS, Trustee,
LINDA SUE SONNENSCHEIN,
DENNIS SONNENSCHEIN, and the
UNITED STATES OF AMERICA, through its agency, the Internal Revenue Service,

      Appellees.
_____

**ORDER**
_____

      Appellant, McGuane & Hogan, LLP, appeals from a March 26, 2008, order of the United States Bankruptcy Court for the District of Colorado ("Bankruptcy Court") approving a Settlement Agreement entered into between the Trustee and Dennis Sonnenschein ("Dennis"), former husband of Debtor, Linda Sonnenschein. Oral argument would not materially assist the determination of this appeal. After consideration of the papers and the case file, and for the reasons set forth below, I AFFIRM the March 26, 2008, Bankruptcy Court order.

# I. BACKGROUND FACTS

This case has a complex history involving multiple proceedings in both state and federal courts in Colorado and Illinois. In brief summary, in November 2002, Debtor commenced a dissolution of marriage action ("divorce case") against Dennis in Jefferson County, Colorado ("divorce court"). Debtor was represented by various law firms, including Appellant law firm. In August 2003, Appellant filed an attorney's lien against Debtor. In September 2003, the Jefferson County court entered judgment on the lien in the amount of $69,369.73 plus interest.

Beginning in 1999—well before the divorce case was filed—the IRS assessed a series of tax liens against both Debtor and Dennis in their individual capacities for tax years including 1993, 1994, 1995, 1996, 1998, and 1999. The tax liens totaled approximately $1.9 million, approximately $1.5 million of which was assessed against Debtor. Appellant admits it was aware of these "huge income tax liabilities" while it represented Debtor. The IRS filed notice of the tax liens against Dennis and Debtor with the Colorado Secretary of State on November 5, 2003, and February 9, 2004, respectively.

While the divorce case was pending, both Dennis and Debtor became the subjects of a federal criminal case in the United States District Court for the Southern District of Illinois ("Illinois court"). Dennis pleaded guilty to certain felony charges in exchange for the Government's agreement to not prosecute Debtor. The Special Master in the divorce case entered an order on June 5, 2003, providing that the first $1.5 million from the sale of the marital estate would be deposited in a trust account for satisfaction of any monetary judgment under the terms of the plea agreement. The Special Master's order was made an order of the divorce court

on July 14, 2003. Appellant admits it knew the $1.5 million would not be available to pay Debtor's attorney fees.

On October 17, 2003, the Government obtained a $1.25 million judgment against Dennis, which included a fine of $250,000 and restitution in the amount of $1 million. Dennis was also sentenced to imprisonment for twelve months and one day. On October 20, 2003, the Illinois court issued an order declaring the Government's interest in Dennis and Debtor's marital home and warning that any attempt to interfere with the Government's interest would be an obstruction of justice.

In order to satisfy the judgment, Dennis sold certain of his business interests to family members in December 2003. Debtor intervened by filing a motion in the divorce court to set aside the transfers on January 5, 2004. On January 21, 2004, the Illinois court issued an order admonishing Debtor's actions and again warning that any attempts to preclude or delay the sale of Dennis's marital assets would be considered to constitute obstruction of justice. In accordance with this order, the Special Master denied Debtor's January 5, 2004, motion on January 28, 2004. Debtor then requested the judge in the divorce case grant the same relief already denied by the Special Master. At a hearing on March 10, 2004, Debtor's attorney told the divorce court that—despite the clear language to the contrary in the January 21, 2004, Illinois court order—the January 5, 2004, motion did not request any relief that was inconsistent with the Illinois court's ruling. The divorce case judge—who had not received the Illinois court's January 21, 2004, order until just before the March 10, 2004, hearing—agreed to grant Debtor's motion and vacated the prior order of the Special Master setting aside $1.5 million in marital assets. The divorce case judge then voided the prior transfers of Dennis's business assets.

On July 15, 2004, Dennis commenced a civil action against Debtor in the Illinois court seeking injunctive and declaratory relief. On January 4, 2005, the Illinois court entered an order requiring Debtor to abide by the June 5, 2003, order of the Special Master and ordering that the first $1.5 million realized from the sale of marital assets be deposited into a trust account for purposes of satisfying Dennis's obligations under the plea agreement. The Illinois court also determined that the Government possessed a lien on Dennis and Debtor's marital property pursuant to 18 U.S.C. § 3613, and that the Government's interests in any such property were superior to any interest held by Debtor pursuant to the divorce case.

The Illinois court enjoined Debtor from taking any action to interfere with the Government's interest in the marital property and ordered Debtor to provide an accounting for any marital property disposed of. In spite of this order, Debtor removed the contents of Dennis and Debtor's marital home and stored them in a storage facility. The Illinois court issued a contempt order against Debtor on April 1, 2005. Once the location of the stored property was determined, the Illinois court issued a writ of execution on July 5, 2005—which included an order to levy "all property in which the defendant has a substantial nonexempt interest"—and the property was seized by the United States Marshals Service on July 15, 2005.

On July 17, 2005, Debtor stipulated to vacate the March 10, 2004, Order and waive any claims to avoid the transfers of Dennis's business assets. The divorce court entered a stipulation order on August 18, 2005, and made the stipulation order an order of the court on December 16, 2005.

On October 12, 2005, Debtor filed a Chapter 7 petition in the United States Bankruptcy Court for the District of Colorado. On January 25, 2006, the Trustee obtained authority from the

Bankruptcy Court to sell the stored property. After paying fees for storage and auction services, the Trustee realized approximately $125,000 in proceeds from the sale. Dennis demanded the $125,000 be delivered to the Illinois court in accord with the June 5, 2003, order of the Special Master. Other competing claims were asserted by Appellant, the IRS, and another of Debtor's divorce attorneys. On September 18, 2006, the Trustee commenced an adversary proceeding to resolve competing claims against the sales proceeds.

On September 5, 2007, the Trustee and Dennis entered into a settlement agreement resolving various claims and disputes between the parties. The settlement agreement addressed three principal issues relevant to this appeal: (1) the transferees of Dennis's business interests agreed to pay the Trustee $67,500 in exchange for the Trustee releasing the estate's claims against the transferees; (2) the Trustee agreed to deliver the $125,000 in sales proceeds to the Clerk of the Illinois court and abandon any interest in the sales proceeds; and (3) Dennis waived his claims to certain marital property. On September 11, 2007, the Trustee filed a motion to approve the settlement agreement.

On October 3, 2007, Appellant filed an objection to the settlement agreement. On January 4, 2008, Appellant filed a motion for relief from the automatic stay in order to obtain orders in the divorce case setting aside a portion of debtor's estate sufficient to satisfy the attorney lien. The Bankruptcy Court held a hearing on the objection and the stay motion on February 26, 2008, and issued a written order on March 26, 2008. The Bankruptcy Court found the settlement agreement to be fair and equitable and in the best interests of the estate and therefore approved the settlement agreement. The court explained that—in light of the approval

of the settlement agreement—the proper procedure was for Appellant to enforce its lien in the Illinois court. The Bankruptcy Court also denied the motion for relief from the automatic stay.

Appellant filed a notice of appeal on April 22, 2008.

## II. STANDARD OF REVIEW

In reviewing a bankruptcy court's decision, the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. *See* 28 U.S.C. § 158(a); FED. R. BANKR. P. 8013. A bankruptcy court's legal conclusions are reviewed *de novo*, and factual findings are reviewed for clear error. *In re Warren*, 512 F.3d 1241, 1248 (10th Cir. 2008). On mixed questions of law and fact, I apply *de novo* review if the question primarily involves the consideration of legal principles and apply the clearly erroneous standard if the question is primarily a factual inquiry. *In re Wes Dor, Inc.*, 996 F.2d 237, 241 (10th Cir. 1993).

A bankruptcy court's approval of a settlement agreement may be disturbed only when it achieves an unjust result amounting to a clear abuse of discretion. *See Reiss v. Hagmann*, 881 F.2d 890, 891–92 (10th Cir. 1989). If the bankruptcy court approves a settlement agreement without a sufficient factual foundation, this constitutes an inherent abuse of discretion. *See id.* at 892. Accordingly, the bankruptcy court's decision to approve a settlement agreement "must be an informed one based upon an objective evaluation of developed facts." *See id.*

The bankruptcy court's decision to approve a settlement agreement must consider whether the settlement is fair and equitable and in the best interests of the estate. *See In re Kaiser Steel Corp.*, 105 B.R. 971, 976 (D. Colo. 1989). In making this determination, the bankruptcy court should consider the probable success of the litigation on the merits, any

potential difficulty in collection of a judgment, the complexity and expense of the litigation, and the interests of creditors in deference to their reasonable views. *See id.* at 977. The bankruptcy judge may not simply accept the trustee's word that the settlement is reasonable, but must instead show he engaged in an independent analysis of the relevant factors. *See In re W. Pac. Airlines, Inc.*, 219 B.R. 575, 580 (D. Colo. 1998). It is not necessary, however, for the bankruptcy judge to engage in an in-depth discussion of his analysis so long as the record as a whole reveals the relevant issues were considered. *See id.* at 579. As long as the relevant facts have been identified, the reasonableness of the settlement may be evaluated and the bankruptcy judge's decision is entitled to deference. *See id.* at 579–80.

### III. ISSUES RAISED ON APPEAL

Appellant raises five issues on appeal where it believes the Bankruptcy Court abused its discretion: (1) the Bankruptcy Court did not require the Trustee to prove the settlement was fair and equitable and in the best interests of creditors and the estate; (2) the Bankruptcy Court did not consider the validity, extent, and priority of the liens against the sales proceeds; (3) the Bankruptcy Court approved the Trustee's abandonment of estate property to a creditor in violation of 11 U.S.C. § 554; (4) the Bankruptcy Court approved the transfer of the $125,000, even though the property was subject to the jurisdiction of a Colorado state court; and (5) the Bankruptcy Court denied Appellant's motion for relief from stay.

#### A. Whether the Settlement was Fair and Equitable

Looking at the terms of the settlement agreement, the Trustee received $67,500 and an agreement from Dennis to waive any claims he may have possessed against the estate. In exchange, Dennis received the proceeds from the sale of the stored property and a waiver of any

7

claims the estate may have possessed against Dennis and the transferees of Dennis's business interests. Appellant argues the bankruptcy judge abused his discretion by failing to make an informed decision based on an objective consideration of the relevant facts. I disagree.

The bankruptcy judge's order approving the settlement agreement demonstrates the relevant issues were considered. In finding the settlement was fair and equitable, the bankruptcy judge noted the case's complex history. The judge determined that Dennis had an as-yet undetermined marital interest in the sales proceeds, and that the sold property was the subject of prior orders of the Illinois court addressing the disposition of Dennis's and Debtor's marital assets. The judge noted that without settlement, the Trustee would likely be required to pursue extensive and risky litigation. Such litigation would have involved numerous government and private parties, would have been expensive, and would—if any litigation funds existed at all—have to be paid for out of the sales proceeds. The judge ultimately determined that—because the estate possessed no real assets outside the sales proceeds—the creditors of the estate would receive a tangible benefit of $67,500 in exchange for abandoning further claims against the sales proceeds. This $67,500—which represented $5,000 more than one-half of the $125,000 sales proceeds—was free of the numerous liens and other encumbrances attached to the $125,000. Accordingly, balancing the four *Kaiser Steel* factors, the bankruptcy judge determined the settlement was reasonable.

Appellant argues the bankruptcy judge abused his discretion by failing to take sufficient evidence at the February 26, 2008, hearing. Appellant argues the lack of evidence shows the judge's decision—that the settlement agreement was fair and equitable and in the best interests of Debtor's creditors—to be devoid of any record support and provides this court with no basis

8

from which to affirm the result. I note, however, that the bankruptcy judge took a full day of testimony from the Trustee, Appellant, and Dennis. The bankruptcy judge accepted into the record numerous exhibits, including orders entered in the Illinois case and the divorce case. The evidence showed Dennis had no assets other than his marital share of the $125,000, and only $2,500 in monthly income. Thus—although the Trustee felt the estate may have had potential claims against Dennis—Dennis would be unable to satisfy any judgment against him. The evidence showed that, in determining a fair amount for settlement, it was the Trustee's practice to determine the full amount that could be collected under a best-case scenario, and offset that amount by the likelihood of success. Although the Trustee testified he had not undertaken an analysis of the full amount he could possibly collect in Debtor's case, he testified that such an undertaking would be expensive and impracticable in light of the limited assets of the estate. The evidence showed the Trustee had no unencumbered funds with which to pursue litigation, and the costs would have to come from the $125,000. It was not clear, however, whether the $125,000 could even be used for that purpose. The Trustee testified he made a calculated judgment that the $67,500 represented a fair discount on the $125,000 in light of the difficulty of success on the merits and of collecting a judgment even if litigation was successful. While Appellant argues this evidence was not credible, that is a decision properly left to discretion of the bankruptcy judge, and I will not question it here. *See In re Young*, 237 F.3d 1168, 1176 (10th Cir. 2001).

Appellant next argues the bankruptcy judge erred by failing to analyze the competing interests in the $125,000 before approving the transfer to the Illinois court. Appellant argues that—as of the date of Debtor's petition—the Government had no valid claim to Debtor's

9

property. This argument, however, ignores the January 4, 2005, order of the Illinois court holding Debtor to be bound by the June 5, 2003, order of the Special Master providing that the first $1.5 million from the sale of marital assets be used to satisfy Dennis's criminal penalties. The January 4, 2005, order further declared that the Government possessed a lien against any marital property, and that the lien was superior to the claims of Debtor. While Appellant notes that the Government's lien was "arguably a preferential transfer," this only serves to highlight the uncertainty undergirding the estate's claims against Dennis—and, accordingly, Dennis's claims to the $125,000 as part of the marital estate. As stated by the Trustee—and accepted by the bankruptcy judge—the numerous competing claims would have been expensive and time-consuming to settle, and the estate possessed a limited pool of funds.

Appellant next argues the bankruptcy judged erred by approving the Trustee's agreement to release claims against the transferee's of Dennis's business interests. Appellant argues that the Trustee was empowered by 11 U.S.C. § 544 and the Colorado Uniform Fraudulent Transfers Act to avoid Dennis's transfers of his business interests. The powers of the Trustee under 11 U.S.C. § 544 are determined by reference to Colorado state law. *See In re Harms*, 7 B.R. 398, 399 (Bankr. D. Colo. 1980). Under Colorado state law, a transfer may be invalidated only if it can be shown "the debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." COLO. REV. STAT. § 38-8-105(1)(a). Although it is undisputed that Dennis—the person who transferred the business interests—was not the debtor, Appellant argues the Trustee was nonetheless empowered to intervene because the transfer of Debtor's share of the business assets was "involuntary." Whatever support this theory may have—and such support appears weak in light of the evidence presented at the hearing indicating the transfers

10

were neither involuntary nor fraudulent—it again only serves to underscore the high degree of uncertainty in this case.

Both the Trustee and the bankruptcy judge considered this uncertainty—along with the many other uncertainties already addressed above—sufficient to justify the settlement agreement. This conclusion was based on the evidence presented, and considered the possible success of litigation on the merits, the difficulty of collecting any possible judgment, and the complexity and expense of litigation. The bankruptcy judge also considered the interests of creditors in deference to their reasonable views. On this point, the judge indicated that no creditor other than Appellant objected to the settlement agreement and further noted that any liens held by Appellant on the $125,000 were not discharged by the settlement, but would have to be pursued in the Illinois court rather than the Bankruptcy Court. Accordingly, I find and conclude the bankruptcy judge's conclusion—that the settlement agreement was fair and equitable and in the best interests of the estate and its creditors—was not an abuse of discretion.

### B. The Validity, Extent, and Priority of the Liens against the Sales Proceeds

The bankruptcy judge declined to make a finding as to the validity of Appellant's claimed lien, finding such an inquiry "unnecessary to the determination of the motions before the Court." As noted above, approval of the settlement agreement had no impact on the validity or collectibility of Appellant's lien. It is not an abuse of discretion for a bankruptcy judge to fail to consider collateral issues which are irrelevant to the question at issue. *See In re BCD Corp.*, 119 F.3d 852, 861–62 (10th Cir. 1997); *In re Universal Clearing House Co.*, 60 B.R. 985, 1002 (D. Utah 1986) ("We cannot find that the bankruptcy court, in ignoring an irrelevant factor, abused its discretion").

11

Even if it would have been preferable for the bankruptcy judge to consider the priority of the liens prior to transferring the sales proceeds to the Illinois court, however, Appellant's liens do not appear superior to those of the Government. Accordingly, any error on the bankruptcy judge's part would be harmless. *See* FED. R. BANKR. P. 9005; FED. R. CIV. P. 61.

Appellant has two separate, but related, liens: an attorney's lien arising under COLO. REV. STAT. § 12-5-119 on August 29, 2003; and a judgment lien for the attorney fees entered by the divorce court on September 25, 2003. *See In re Dickinson*, 185 B.R. 840, 842 (Bankr. D. Colo. 1995) (holding a statutory attorney's lien does not merge into a subsequent judgment lien for purposes of determining priority in a bankruptcy proceeding). The Government—specifically the IRS—on the other hand, had perfected tax liens on Debtor's property—including the sales proceeds—for several years before Debtor hired Appellant in 2003. *See United States v. Dawes*, 161 F. App'x 742, 746 (10th Cir. 2005) (citing 26 U.S.C. §§ 6321 and 6322); *United States v. Cache Valley Bank*, 866 F.2d 1242, 1244–45 (10th Cir. 1989).

Had the bankruptcy judge made a finding regarding the priority and extent of the liens against the sales proceeds, the judge would likely have found Appellant's attorney's lien inferior to the Government's tax liens—liens which greatly exceed the value of the sales proceeds—under 26 U.S.C. §§ 6321–6323. *See In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1176 (6th Cir. 1990); *United States v. Chapman*, 281 F.2d 862, 867–68 (10th Cir. 1960) ("The tax lien created by § 6321 arises at the time of the assessment of unpaid taxes, unless the competing claims are within § 6323"). While the judgment lien remains superior in time to the IRS lien—because it was recorded prior to the IRS filing its Notices of Federal Tax Liens, *see* 26 U.S.C. § 6323(a)—a judgment lien has priority over a later-filed tax lien "only when it has been

'perfected' in the sense that 'the identity of the lienor, *the property subject to the lien*, and the amount of the lien are established.'" *See United States v. McDermott*, 507 U.S. 447, 449–51 (1993) (emphasis in original) (quoting *United States v. New Britain*, 347 U.S. 81, 84 (1954)); COLO. REV. STAT. § 13-52-102. As there is no evidence in the record showing the stored property—ownership of which was never determined by the divorce court—was "identified" prior to the IRS filing the Notice of Federal Tax Liens against Debtor, there is likewise no evidence in the record from which the bankruptcy judge could have concluded the judgment lien was "perfected." Moreover, to the extent ownership was determined by virtue of the June 5, 2003, order of the Special Master, ownership was awarded to Dennis and the sales proceeds could not be used to satisfy a judgment lien against Debtor. In any case, determining the validity, extent, and priority of Appellant's liens would not have achieved a better outcome for Appellant on the basis of the evidence presented. Accordingly, the bankruptcy judge's finding that the priority inquiry was "unnecessary to the determination of the motions before the Court"—if error at all—was harmless error. *See* FED. R. BANKR. P. 9005; FED. R. CIV. P. 61.

    C. Abandonment of Estate Property to a Creditor in Violation of 11 U.S.C. § 554

In approving the settlement agreement, the bankruptcy judge ordered the sales proceeds abandoned under 11 U.S.C. § 554 and released to the clerk of the Illinois court. While Appellant argues this amounts to illegal abandonment to a creditor—namely the Government—the Illinois court itself is not a creditor. Under Tenth Circuit authority, property abandoned under 11 U.S.C. § 554 reverts to "whoever had the possessory right to the property at the filing of the bankruptcy." *In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990). It is undisputed that prior to the commencement of the bankruptcy case, the stored property was seized by the United States

13

Marshals Service pursuant to a writ of execution issued by the Illinois court. As no language in either the settlement agreement or the bankruptcy judge's order requires the funds be used for any specific purpose, approval of the settlement agreement merely reverts the sales proceeds back to the party with the possessory right to the stored property at the filing of the bankruptcy—namely, the Illinois court. Accordingly, abandonment of the property and transfer to the Illinois court was not an abuse of discretion.

### D. Transfer of Property Subject to the Jurisdiction of a Colorado State Court

Appellant argues it was an abuse of discretion for the bankruptcy judge to transfer the sales proceeds to the Illinois court because the Illinois court had no jurisdiction over the funds, while the divorce court retained such jurisdiction. As noted above, the sales proceeds were realized from the sale of personal property seized by the United States Marshals Service pursuant to a writ of execution issued by the Illinois court before the bankruptcy was filed. Accordingly, transfer to the Illinois court was not an abuse of discretion.

### E. Appellant's Motion for Relief from Stay

Included in the order approving the settlement agreement, the bankruptcy judge denied a January 3, 2008, motion by Appellant for relief from the automatic stay under 11 U.S.C. § 362. Once the sales proceeds were abandoned by the estate, Appellant's motion for relief from the stay was moot. *See* 11 U.S.C. § 362(c)(1). As to any remaining estate property, the bankruptcy judge correctly determined that Appellant made no showing that the Bankruptcy Court was unable to determine the validity of the lien. As the burden is on the creditor seeking relief from the automatic stay to show cause for the relief requested, the bankruptcy judge's denial of

Appellant's motion was not an abuse of discretion. *See In re Yates*, 332 B.R. 1, 5–6 (10th Cir. BAP 2005); *In re Gunnison Ctr. Apartments, LP*, 320 B.R.391, 395 (Bankr. D. Colo. 2005).

## IV.  CONCLUSION

Following a full evidentiary hearing, the Bankruptcy Court entered an order approving the Trustee's settlement agreement with Dennis Sonnenschein.  Based upon a sufficient factual foundation and objective consideration of the four factors enumerated in *In re Kaiser Steel*, 105 B.R. 971 (D. Colo. 1989), the bankruptcy judge determined the agreement was both fair and equitable and in the best interests of the estate and its creditors.  Appellant fails to show this determination was an abuse of discretion.  Appellant likewise fails to show the bankruptcy judge's decision to transfer the sales proceeds to the Illinois court and to deny Appellant's motion for relief from the automatic stay was an abuse of discretion.

Accordingly, the March 26, 2008, order of the Bankruptcy Court is AFFIRMED.

Dated: December   16  , 2008.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE